Slip Op. 07-59

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

```
_____
                                  :
SHINYEI CORPORATION OF AMERICA,   :
                                  :
         Plaintiff,               :
                                  :    Consolidated
         v.                       :    Court No. 00-00130
                                  :
UNITED STATES,                    :
                                  :
         Defendant.               :
_____ :
```

**Held:** Plaintiff's motion for partial summary judgment denied. Defendant's cross-motion for summary judgment granted. Final judgment entered for Defendant.

April 20, 2007

Charles H. Bayar, for Shinyei Corporation of America, plaintiff.

Peter D. Keisler, Assistant Attorney General; Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (James A. Curley), for the United States, defendant.

OPINION

**TSOUCALAS, Senior Judge:** This matter comes before the Court pursuant to the decision of the Court of Appeals for the Federal Circuit ("CAFC") in Shinyei Corp. of Am. v. United States, ("Shinyei CAFC") 355 F.3d 1297 (Fed. Cir. 2004), and the CAFC

mandate of March 12, 2004, reversing and remanding the judgment of
this Court in <u>Shinyei Corp. of Am. v. United States</u>, ("<u>Shinyei
CIT</u>") 27 CIT 305, 248 F. Supp. 2d 1350 (2003).  The CAFC held that
this Court erred in granting Defendant's motion to dismiss the
action pursuant to USCIT R. 12(b)(1).  Accordingly, the parties
proceeded on the merits of the case consistent with the CAFC
decision.


## JURISDICTION

Shinyei is pleading an Administrative Procedure Act, 5 U.S.C.
§§ 701-706 (2000) ("APA"), cause of action and this Court has
jurisdiction over the matter pursuant to 28 U.S.C. § 1581(i)(4)
(2000).[1]  <u>See</u> <u>Shinyei CAFC</u>, 355 F.3d at 1304-05.


## STANDARD OF REVIEW

On a motion for summary judgment, the Court must determine
whether there are any genuine issues of fact that are material to
the resolution of the action.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>,
477 U.S. 242, 248 (1986).  A factual dispute is genuine if it might

---

[1]  "The APA is not a jurisdictional statute and 'does not
give an independent basis for finding jurisdiction in the Court
of International Trade.'"  <u>Shinyei CAFC</u>, 355 F.3d at 1304; <u>citing
to</u> <u>Am. Air Parcel Forwarding Co. v. United States</u>, 718 F.2d 1546,
1552 (Fed.Cir. 1983).  The CAFC has ruled that the Plaintiff in
the case at bar has jurisdiction under 28 U.S.C. § 1581(i)(4).
<u>See</u> <u>Shinyei CAFC</u>, 355 F.3d at 1304-05.

affect the outcome of the suit under the governing law.  See id.
Accordingly, the Court may not decide or try factual issues upon a
motion for summary judgment.  See Phone-Mate, Inc. v. United
States, 12 CIT 575, 577, 690 F. Supp. 1048, 1050 (1988).  When
genuine issues of material fact are not in dispute, summary
judgment is appropriate if a moving party is entitled to judgment
as a matter of law.  See USCIT R. 56; see also Celotex Corp. v.
Catrett, 477 U.S. 317, 322-23 (1986).

**DISCUSSION**

I.   **Background**

     A.   **Procedural History**

     Plaintiff, Shinyei Corporation of America ("Shinyei"), a
United States corporation wholly owned by Shinyei Kaisha Company
("Kaisha"), a Japanese trading company, filed a complaint with this
Court on March 23, 2000.  On September 25, 2002, this Court granted
Shinyei's motion for leave to amend its complaint, in which Shinyei
sought to declare certain instructions issued by the United States
Department of Commerce ("Commerce") in violation of 19 U.S.C. §
1675(a)(2) (1988 & Supp. 1993).  As such, Shinyei moved to remand
this case to Commerce for the purpose of issuing corrected
instructions with regard to liquidation of the forty-two Shinyei
entries of certain bearings.  See Shinyei CIT, 27 CIT at 306, 248

F. Supp. 2d at 1351.  Subsequently, on October 8, 2002, Defendant moved to dismiss this case pursuant to USCIT R. 12(b)(1) for lack of subject matter jurisdiction and USCIT R. 12(b)(5) for failure to state a claim on which relief can be granted.  See Shinyei CIT, 27 CIT at 306, 248 F. Supp. 2d at 1352.  On February 14, 2003, this Court granted Defendant's motion to dismiss under USCIT R. 12(b)(1).  See Shinyei CIT, 27 CIT at 328, 248 F. Supp. 2d at 1360. On January 20, 2004, the CAFC reversed, and remanded the action for further proceedings on the merits.  See Shinyei CAFC, 355 F.3d at 1312.  On March 22, 2004, this Court ordered that Shinyei proceed with the merits of the case consistent with the CAFC's opinion. See Shinyei Corp. of Am. v. United States, 28 CIT, ___, ___, Slip Op. 04-26, 2004 Ct. Intl. Trade LEXIS 26 (2004).

### B.   Factual Background

The full factual and procedural background of this case has been set forth in the prior decisions of the CAFC and this Court. See Shinyei CAFC, 355 F.3d 1297; Shinyei CIT, 27 CIT 305, 248 F. Supp. 2d 1350.  The facts relevant to the instant inquiry are as follows.  Between the May 1, 1990 and April 30, 1991 period of review ("POR"), Shinyei imported certain merchandise into the United States.  The merchandise at issue ("Merchandise" or "Subject Entries" or "Disputed Entries") was purchased by Shinyei from Kaisha which, in turn, purchased the Merchandise from six Japanese

manufacturers (collectively "Six Manufacturers"), namely, Fujino
Iron Works Co., Ltd. ("Fujino"), Nakai Bearing Co., Ltd. ("Nakai"),
Nankai Seiko Co., Ltd. ("Nankai"), Inoue Jikuuke Kogyo Co.
("Inoue"), Showa Pillow Block Mfg., Ltd. ("Showa") and Wada Seiko
Co., Ltd. ("Wada").    See Final Results of Antidumping Duty
Administrative Reviews of Antifriction Bearings (Other Than Tapered
Roller Bearings) and Parts Thereof From France; et. al., ("Final
Results") 57 Fed. Reg. 28,360 (ITA June 24, 1992); Shinyei CIT, 27
CIT at 306-07, 248 F. Supp. 2d at 1352.

The Disputed Entries were subject to an antidumping
investigation.  See Initiation of Antidumping Duty Investigation;
Antifriction Bearings (Other Than Tapered Roller Bearings) and
Parts Thereof From Japan, 53 Fed. Reg. 15,076 (ITA Apr. 27, 1988);
Shinyei CIT, 27 CIT at 307, 248 F. Supp. 2d at 1352.  On November
9, 1988, Commerce published its preliminary determination with
regard to this investigation instructing the United States Customs
Service ("Customs") that: (1) liquidations of the Merchandise
should be suspended; and (2) deposits or bonds should be required
at a certain rate for future entries from all non-investigated
manufacturers, producers, and exporters, including the Six
Manufacturers.  See Preliminary Determinations of Sales at Less
Than Fair Value: Antifriction Bearings (Other Than Tapered Roller
Bearings) and Parts Thereof From Japan, 53 Fed. Reg. 45,343;

Shinyei CIT, 27 CIT at 307, 248 F. Supp. 2d at 1351.  This deposit
and bond rate was corrected by Commerce in the final determination.
See Final Determinations of Sales at Less Than Fair Value;
Antifriction Bearings (Other Than Tapered Roller Bearings) and
Parts Thereof From Japan ("Determination"), 54 Fed. Reg. 19,101
(May 3, 1989); see also  Shinyei CIT, 27 CIT at 307, 248 F. Supp.
2d at 1352.  On the basis of this Determination, Commerce published
an antidumping duty order.   See Antidumping Duty Orders: Ball
Bearings, Cylindrical Roller Bearings, and Spherical Plain
Bearings, and Parts Thereof From Japan, 54 Fed. Reg. 20,904 (ITA
May 15, 1989);   Shinyei CIT, 27 CIT at 307, 248 F. Supp. 2d at
1352.

     During the second administrative review, Shinyei deposited
estimated antidumping duties on the entries at issue.  See Shinyei
CIT, 27 CIT at 307, 248 F. Supp. 2d at 1352-53.  On June 24, 1992,
Commerce published the final results of the second review in which
Commerce established specific antidumping duty deposit rates for
the merchandise manufactured by the Six Manufacturers.  See Final
Results, 57 Fed. Reg. 28,360; Shinyei CIT, 27 CIT at 307, 248 F.
Supp. 2d at 1353.  Consequently, Commerce issued instructions
ordering Customs to liquidate all merchandise of the type at issue
that was imported from Japan during the POR (except for the
products of certain manufacturers) at the rate designated in the

Determination.  Shinyei CIT, 27 CIT at 307, 248 F. Supp. 2d at
1353.  The list of manufacturers exempted from the instructions
included the Six Manufacturers.  See id.  Moreover, on February 23,
1998, Commerce summarized the rulings of this Court over the course
of the antifriction bearing litigation when it published its
amended final results.  See Amended Final Results of Antidumping
Duty Administrative Reviews of Antifriction Bearings (Other Than
Tapered Roller Bearings) and Parts Thereof From France, et. al.
("Amended Final Results"), 63 Fed. Reg. 8908 (ITA Feb. 23, 1998);
Shinyei CIT, 27 CIT at 307-08, 248 F. Supp. 2d at 1353.

On October 22, 1998, Commerce issued final amended
instructions to Customs regarding the liquidation of all second
review entries of the merchandise at issue from Japan produced by
Nankai.  See Shinyei CIT, 27 CIT at 308, 248 F. Supp. 2d at 1353.
On June 26, 1998, Commerce issued instructions to Customs regarding
the liquidation of all second review entries of [the merchandise at
issue] from Japan produced by Fujino.  See id.

Shinyei commenced this action on March 23, 2000, in order to
enforce the second review results and contest Commerce's
instructions with respect to Nankai and Fujino.  See Shinyei CIT,
27 CIT at 308-312, 248 F. Supp. 2d at 1353-56.  Shinyei argued that
the Court had jurisdiction under both the Administrative Procedure
Act ("APA")and 28 U.S.C. § 1581(i)(4).  See id.  Shinyei did not

seek, and the Court did not issue, any injunction to suspend liquidation of the entries at issue pending its final decision. See Shinyei CIT, 27 CIT at 308, 248 F. Supp. 2d at 1353.  On August 1, 2000, Commerce issued a clean-up instruction to Customs to liquidate, as entered, all second review period entries of the merchandise at issue from Japan that had not been liquidated under previously-issued instructions.  See id.  The liquidation of these entries, occurred between September 8, 2000, and February 9, 2001. On November 1, 2000, Shinyei protested the no-change liquidation to entry 032-0153132-8 ("032 Entries"), and Customs granted the protest in part.  See Def.'s Statement of Material Facts Not in Dispute at 3.  Customs proceeded to reliquidate the entry and issued Shinyei a refund.  See id.  All but two of the entries were liquidated before December 15, 2000.  See Shinyei CIT, 27 CIT at 308, 248 F. Supp. 2d at 1353.

On September 25, 2002, this Court granted Shinyei's motion for leave of the Court to amend its complaint filed on March 23, 2000. Shinyei limited its claim to Commerce's error stating that Commerce issued certain liquidation instructions to Customs to implement the results of an antidumping administrative review and  in violation of 19 U.S.C. § 1675(a)(2), the instructions did not permit the review results to be the basis for assessments of antidumping duty on entries for which Shinyei was the importer of record.  As a

consequence, Shinyei argued, Customs liquidated the entries at issue under other, inapplicable instructions resulting in a substantial and erroneous assessments of excessive antidumping duties on the entries at issue, as well as the attendant denial of interest on excess deposits of antidumping duty that should have been refunded.  See Shinyei CIT, 27 CIT at 308-09, 248 F. Supp. 2d at 1353-54.

Shinyei specifically contested the Nankai and Fujino instructions.  With respect to the Nankai instructions, Shinyei argued that Commerce did not advise Customs that Shinyei was the importer of the entries at issue or that Kaisha acted as an intermediary.  With respect to the Fujino instructions Shinyei argued that Commerce incorrectly omitted specific assesment rates that were calculated in the second review for five other United States customers.  Shinyei further argued the Commerce failed to advise Customs that Shinyei was the importer of the entries at issue, or that Kaisha had once again acted as an intermediary.  See Shinyei CAFC, 355 F.3d at 1303-04.

Subsequently, Defendant, on October 8, 2002, moved to dismiss this case pursuant to USCIT R. 12(b)(1) for lack of subject matter jurisdiction and USCIT R. 12(b)(5) for failure to state a claim upon which relief can be granted.  See Shinyei CIT, 27 CIT at 309, 248 F. Supp. 2d at 1354.  This Court granted Defendant's motion to

dismiss  under  USCIT  R.  12(b)(1)  for  lack  of  jurisdiction  on
February 14, 2003.  Shinyei CIT, 27 CIT at 328, 248 F. Supp. 2d at
1361.  On January 20, 2004, the CAFC reversed and remanded the case
for further proceedings on the merits.  See Shinyei CAFC, 355 F.3d
at 1312.

    In a letter from the Defendant dated May 27, 2004, this Court
was advised that both parties were discussing proposals to resolve
the case at bar.  See Letter to the Hon. Nicholas Tsoucalas from
Mr. James A. Curley, May 27, 2004.  A follow up letter, dated July
29, 2004, advised this Court that resolution was likely.  However,
no resolution between the parties was achieved.  See Letter to the
Hon. Nicholas Tsoucalas from Mr. James A. Curley, July 29, 2004.

    On  December  29,  2005  Shinyei  filed  its  Motion  for
Consolidation  and  for  Leave  to  File  Consolidated  Complaint
("Consolidation Motion") along with a Consolidated Complaint.  The
Government filed papers in opposition to Shinyei's Consolidation
Motion on January 13, 2006.  On January 26, 2006, the Court ordered
that Court Numbers 00-00130, 01-00707, 03-00688 and 04-00252 be
consolidated under Court Number 00-00130.

## II. Contentions of the Parties

### A.   Shinyei's Contentions

    Shinyei contends that the main issue is whether the deemed

liquidation of the Merchandise is valid.  <u>See</u> Mem. Of Law in Support of Pl.'s Mot. for Partial Summary Judg. ("Shinyei Mem.") at 1.  Shinyei states that it agrees "with the Government that publication of the Commerce Notice removed the suspension of liquidation of the Subject Entries and constituted notice to Customs of such removal[.]" Shinyei Mem. at 8.  Shinyei "further agree[s] that Customs did not actually liquidate any of the Subject Entries under 19 U.S.C. § 1500 within six months [of] February 23, 1998[.]"  <u>Id.</u> at 9.

Shinyei, however, contends that <u>Koyo Corp. v. United States</u>, ("<u>Koyo</u>"), 30 CIT ___, 407 F. Supp. 2d 1305 (2005) holds that 19 U.S.C. § 1504(d) cannot be read or applied so that entries are deemed liquidated with antidumping duty assessed at the deposit rate required at the time of entry, when that result is adverse to the importer and contrary to lower antidumping duty assessment rates determined in final court decisions and/or specified in Commerce antidumping duty assessment instructions as such an application of § 1504(d) would create an absurd, and therefore impermissible, result.  <u>See</u> Shinyei Mem. at 9.  Shinyei clarifies that it does not rely completely on <u>Koyo</u> "because its absurdity holding assumes the Government's [incorrect] position that an importer has no post-liquidation remedies against an adverse deemed liquidation[.]  <u>See</u> Shinyei Mem. at 10-11.  As such, Shinyei

concludes that it accepts _arguendo_ the Government's contention that
the Subject Entries were deemed liquidated at the cash deposit rate
("no-change") on August 23, 1998, by operation of 19 U.S.C. §
1504(d).  _See_ _id._ at 11.

Shinyei further contends that the language of 19 U.S.C. § 1504
is procedural and not substantive in nature.  _See_ _id._ at 12-21.
Shinyei explains that deemed liquidation is affected by operation
of 19 U.S.C. § 1504, based on the pretense that Customs has decided
upon a no-change result by not acting within the prescribed time
period.  _See_ _id._ at 14.  Shinyei contends that 19 U.S.C. § 1675
requires Commerce "to conduct a periodic review to determine, among
other things, antidumping duty assessment rates for the subject
goods."  _Id._ at 17.  Shinyei further contends that under 19 U.S.C.
§ 1675(a)(2)(c) the final review results become the basis for the
liquidation of the suspended entries.  _See_ _id._ at 17.  As such,
Shinyei argues that Customs has no decision-making authority
related to 19 U.S.C. § 1675 periodic reviews.  _See_ _id._ at 17.
Shinyei contends that Customs' role is purely ministerial, as they
are merely required to liquidate entries in accordances with a
final review result or final court decision based on Commerce's
instructions.  _See_ _id._ at 17-18.

Shinyei stresses that they disagree with the Government's
interpretation of 19 U.S.C. § 1504(d), which requires prescribed

no-change results to become the basis for liquidation instead of Commerce's final review results and/or a courts' final decision. See id. at 18.  Shinyei contends that such an interpretation would: 1) impliedly nullify statutes and statutory determinations; 2) allow an agency charged with implementing a party's rights to destroy those same rights by not implementing them properly; 3) undercut Commerce's authority in the assessment of antidumping duties; 4) allow Customs to vitiate its ministerial duty by refusing to take any action.  See Shinyei Mem. at 18-20.

Shinyei further contends that importers are entitled to the same remedies under 19 U.S.C. § 1500 as under 19 U.S.C. § 1504(d). See id. at 21.  Shinyei specifies that although reliquidation under 19 U.S.C. § 1501 is limited to liquidations made pursuant to 19 U.S.C. § 1500, an importer's right to protest under § 1514(a) is not conditioned upon § 1500.  See id. at 21-22.  Shinyei contends that the legislative history of § 1504(d) indicates that deemed liquidation was created for the benefit of importers.  See id. at 24.  Congress did not intend the statute to curtail importers remedies.  See id.  Shinyei asserts that Congress enacted § 1504(d) in order to prevent Customs from imposing additional duties after a prolonged period of time and to facilitate returns on deposits made at the time of entry.  See id.  Referencing the legislative history of 19 U.S.C. § 1504(d), Shinyei argues that "[i]nstead of

being able merely to delay duty refunds indefinitely by delaying
actual liquidation under the prior law, [if a deemed liquidation is
not protestable] Customs could . . . deny duty refunds forever by
delaying actual liquidation for the specified time periods,
resulting in no-change deemed liquidations that cannot be reviewed
or reliquidated" Id. Shinyei further contends that the Customs
regulations themselves explicitly provide for the protesting of a
deemed liquidation.   See id. at 25 (citing to 19 C.F.R. §§
159.9(c)(2)(i)-(iii)).   Shinyei states that as Customs never
published bulletin notices of the deemed liquidations under 19
C.F.R. § 159.9(c)(2)(ii), Shinyei's time to file a protest as
provided for in 19 C.F.R. § 159.9(c)(2)(iii), has not expired.  See
id. at 33-34.

     Shinyei further contends "that the Government's position that
an importer has no post-liquidation remedy against an adverse
deemed liquidation suffers from two constitutional infirmities, and
so should be rejected." Id. at 27.  Shinyei proceeds to list those
"constitutional infirmities" as involving (1) due process and (2)
equal protection.   Id. at 25-32.   Under the due process claim,
Shinyei argues that barring an importer from contesting a deemed
liquidation amounts to a deprivation of property without due
process. See id. at 25-32 (citing to Logan v. Zimmerman Brush Co.
("Logan"), 455 U.S. 422 (1982)).  Shinyei interprets the majority

opinion in Logan as holding that a state agency's inaction does not
bar an employee's claim or property interests.  See Shinyei Mem. at
29 (citing to Logan, 455 U.S. at 424-38.)  Under the equal
protection claim, Shinyei relies on the concurring opinion in Logan
which it interprets as stating that agency inaction is not
rationally related to any legitimate government purpose.  See
Shinyei Mem. at 30-31 (citing to Logan, 455 U.S. at 438-42).

     Finally, Shinyei asserts that to the extent that the
assessments were caused by Commerce Decisions, it has a cause of
action for direct judicial review of the assessments in this Court
under the APA and additionally has exclusive jurisdiction under 28
U.S.C. § 1581(i).  See Shinyei Mem. at 30-31; citing to Shinyei
CAFC, 355 F.3d at 1304-10.  Shinyei further argues that to the
extent that the assessments were caused by Customs Decisions, it
has a cause of action for judicial review of the assessment under
19 U.S.C. § 1514(a), over which the CIT has exclusive jurisdiction
pursuant to 28 U.S.C. § 1581(a).  Shinyei claims that the Court has
exclusive jurisdiction because Shinyei timely filed protests with
Customs against the assessments made in the actual liquidations;
timely commenced civil actions in this court seeking judicial
review after Customs denied the protest; and timely paid all
duties, charges and fees assessed on the Subject Entries by the
actual liquidations. See Shinyei Mem. at 33-34.

During Oral Argument held on October 26, 2006, Shinyei argued
that an Order signed by the Court on July 14, 1992 ("the Order"),
which the government had referred to as being a preliminary
injunction, was in fact not a preliminary injunction at all.  <u>See</u>
Trans. Oral Arg of October 26, 2006 at 45-49.  Shinyei specifically
refers to paragraph 3 of the Order, and claims that the language
indicates a mandatory injunction or a permanent mandatory
injunction.  <u>See</u> <u>id.</u> at 45-49.  Shinyei reaffirmed this point in a
letter to the Court dated November 3, 2006, in which Shinyei
attached the aforementioned Order.  <u>See</u> Letter to the Hon. Nicholas
Tsoucalas from Mr. Charles H. Bayer, November 3, 2006 ("Nov.
Letter").  Paragraph 3 of the Order reads:

> ORDERED that the entries shall be liquidated in
> accordance with the final court decision as provided in
> 19 U.S.C. § 1516a(e), notwithstanding the provisions of
> 19 U.S.C. § 1504(d).

<u>See</u> Order, <u>Federal-Mogul Corp. v. United States</u>, Court No. 92-06-
00422, July 14, 1992.  Shinyei argues that Paragraph 3 of the Order
"requires that all of the [Disputed Entries] be actually liquidated
at the final review rate notwithstanding any deemed liquidation,
whether they merit additional assessments or refunds."  Pl.'s Mem.
Law Reply Def's Resp. Pl.'s Mot. Partial Summary Judgment ("Pl's
Reply") at 10.

On December 15, 2006, Shinyei once again contacted this Court via letter, this time advising the Court of the December 14, 2006 CAFC decision, <u>Norsk Hydro Canada, Inc. v. United States</u> ("<u>Norsk</u>"), 472 F.3d 1347 (Fed.Cir. 2006).  <u>See</u> Letter to the Hon. Nicholas Tsoucalas from Mr. Charles H. Bayer, December 15, 2006. ("Dec. Letter").  In the Dec. Letter, Shinyei contends that the recent CAFC decision supports its position that a deemed liquidation adverse to an importer is protestable under 19 U.S.C. § 1514. Shinyei further contends that the <u>Norsk</u> decision further holds that Customs is required to give proper notice of liquidation whether the liquidation is actual or deemed and that the publication of the bulletin notice of liquidation is the actual trigger for deciding the start of the protest period.  <u>See</u> Dec. Letter at 2.

**B.   Defendant's Contentions**

The Government asserts that as Customs failed to liquidate the Disputed Entries within the six month period as required by 19 U.S.C. § 1504(d), the entries were deemed liquidated by operation of law on August 23, 1998, "at the rate and amount of duty deposited by Shinyei at the time of entry."  Def's Brief Opp'n Pl's Mot. Partial Sum. J. and in Support of Cross-Motion for Sum. J. ("Gov't Brief") at 9.  Accordingly, the Government argues that Commerce's publication of the amended final results in the Federal Register on February 23, 1998, removed the suspension on the

liquidation of the Disputed Entries.  See id. at 8-9; (citing to

Fujitsu Gen. America, Inc. v. United States, 283 F.3d 1364, 1381-82

(Fed. Cir. 2002)).  The Government's main argument is that as the

Disputed Entries "were actually liquidated at the deemed liquidated

rate and amount of duties, Shinyei has failed to state a claim on

which relief can be granted.  This action, therefore should be

dismissed."  Id. at 9-10.

   The Government further asserts that the deemed liquidation of

the Disputed Entries was final.  See id. at 11 (citing to United

States v. Cherry Hill Textiles, Inc. ("Cherry Hill"), 112 F.3d

1550, 1560 (Fed.Cir. 1997)).  The Government contends that

"whenever the courts have determined that an entry was deemed

liquidated under § 1504(d), they have set aside Customs' actual

liquidation and have treated the deemed liquidation as final."  Id.

at 12-13 (citing to NEC Solutions (Am.), Inc. v. United States, 411

F.3d 1340, 1343, 1346 (Fed. Cir. 2005)); Int'l Trading Co. v.

United States, 281 F.3d at 1270-71, 1276 (Fed. Cir. 2002); American

Int'l Chem., Inc. v. United States, 29 CIT ___, ___, 387 F. Supp 2d

1269-70 (2005).

   The Government further argues that as the Disputed Entries

were deemed liquidated by operation of law, Customs did not make a

decision to liquidate, and as such, Shinyei has no right to protest

under 19 U.S.C. § 1514(a).  See Gov't Brief at 14.  However, the

Government then argues that "even if it is assumed, _arguendo_, that

a protest against the deemed liquidation could have been filed,

Shinyei did not file a timely protest or request for

reliquidation." _Id._ at 15.  The Government elaborates that as "the

Federal Circuit noted, 'publication in the Federal Register is a

familiar manner of providing notice to parties in antidumping

proceedings.'"  _Id._ at 15 (citing to _Int'l Trading_, 281 F.3d at

1275).  According to the Government, "Commerce's publication of the

amended final results and final court decision in the Federal

register on February 28, 1998," was notice to both Customs and

Shinyei that suspension of liquidation was removed.  _Id._ at 15.

Thus, the Government continues, Shinyei was on notice "that its

entries would be deemed liquidated if not actually liquidated by

Customs within six months, _i.e._, by August 28 1998."  _Id._ at 15-16.

The Government continues:

> Shinyei did not request Customs, before August 28, 1998,
> to liquidate its entries, nor did it bring an action in
> the Court for  writ of mandamus or for relief under the
> [APA].  Instead Shinyei waited until March 2000 to
> commence this action in which it sought a writ of
> mandamus against Customs directing it to liquidate the
> entries.

_Id._ at 16.

The Government then counters Shinyei's absurdity claim by

asserting that 19 U.S.C. § 1504(d), as enacted in 1993, precludes

such an interpretation.  _See id._ at 17.  The Government asserts

that 19 U.S.C. § 1504(d) "covers all entries, which necessarily includes entries for which the rate asserted by Shinyei at the time of entry (the deposit rate) was higher than the administrative review rate[.]" Id. at 19.  The Government further asserts that Congress enacted 19 U.S.C. § 1504 "in an effort to increase certainty and to bring finality to the liquidation process." Id. at 21 (citing to Int'l Trading, 281 F.3d at 1272; Cherry Hill, 112 F.3d at 1559).  The Government further argues that its interpretation of 19 U.S.C. § 1504(d) could not be deemed absurd, as the CAFC has applied a previous version of the statute "to entries that were deemed liquidated although the administrative review rate was lower than the rate asserted by the importer at the time of entry." Id. at 23; citing to Rheem Metalurgica S/A v. United States, 160 F.3d 1357, 1359 (Fed. Cir. 1998).

The Government further contends that despite Shinyei's claim, Customs is not required to give notice of deemed liquidation.  See id. at 26 (citing 19 U.S.C. § 1504(a)).  Nonetheless, the Government argues, Shinyei received notice that suspension of liquidation was removed through Commerce's publication in the Federal Register of February 23, 1998.  See id. at 26.  The Government further clarifies that "if Customs had actually liquidated the [Disputed Entries] before August 23, 1998, it would have posted bulletin notices of deemed liquidation.  Because

Customs did not post such a notice, Shinyei knew, or should have known, that the entries were deemed liquidated on that date." <u>Id.</u> at 26.   Consequently, the Government concludes, Shinyei had reasonable notice, but simply failed to exercise its right to protest the deemed liquidation.  <u>Id.</u>  Furthermore, the government argues that the legislative history of § 1504 indicates Congress' intent that notice of deemed liquidation was unnecessary as it states that if an importer has not received notice of liquidation before the six month notice period expires, then the statute itself serves as notice of liquidation, and notification by Customs is therefore not necessary.  <u>See</u> <u>id.</u> at 27-28.   Additionally, the Government argues that as Shinyei had adequate remedies against deemed liquidation, Customs had not acted arbitrarily or capriciously in the case at bar, and as such, there has been no denial of Shinyei's equal protection rights.  <u>See</u> <u>id.</u> at 28.

The Government then turns to its interpretation of <u>Koyo</u>. Initially the Government distinguishes the case at bar from <u>Koyo</u> by stating that in <u>Koyo</u>:

> the importer's entries were included in Commerce's instructions for liquidation at the lower administrative review rate.  However, Customs determined that the importers' entries were deemed liquidated, and then actually liquidated the entries "no change" to reflect the deemed liquidation rate.  Here, Customs did not determine that Shinyei's entries were deemed liquidated, and applied Commerce's instructions to liquidate the entries at the deposit rate.

_See_ Gov't Brief at 29 (citing _Koyo_, 403 F. Supp. 2d at 1307).  The
Government, however, further argues that the _Koyo_ court ruled
contrary to the plain meaning of 19 U.S.C. § 1504(d), and
incorrectly assessed the remedies available to importers.  _See_ _id._
at 29-30.

The Government concludes by arguing that it is entitled to
recover payment on a refund erroneously paid to Shinyei on Entry
No. 032-0153132-8.  _See_ _id._ at 31.  Due to a protest filed by
Shinyei, Customs reliquidated the 032 Entries and paid Shinyei a
refund of $676.75, and interest of $827.50.  _See_ _id._ at 31.  The
Government argues that as the 032 Entries were deemed liquidated by
operation of law at the amount of duty deposited by Shinyei at the
time of entry, no refund was thus necessary, and Customs therefore
erred in granting the refund.  _See_ _id._ at 31-32.

## III. Analysis

The CAFC remanded the case at bar, ruling that the CIT did
have jurisdiction to determine whether Shinyei is entitled to
relief based on the merits of Shinyei's case.  _See_ _Shinyei CAFC_,
355 F.3d at 1312.  The CAFC stated:

> The question for the [CIT] is whether Commerce's
> instructions with regard to Fujino and Nankai were not in
> accordance with the Amended [Final] Results (as required
> by sections 1675(a)(2)), or whether the error was in
> Customs' liquidation of the subject entries despite

correct instructions.  If it is the later, despite both
parties' arguments to the contrary, Shinyei's appropriate
avenue for relief would be under 19 U.S.C. § 1514.

Shinyei CAFC, 355 F.3d at 1302 n.2.


The CAFC found that the manufacturers in question were
indisputably within the scope of the Amended Final Results.  See
Shinyei CAFC, 355 F.3d at 1302.  Additionally, the CAFC reconfirms
that "both parties agree that section 1514 is inapplicable because
the alleged agency error was on the part of Commerce, not Customs."
Shinyei CAFC, 355 F.3d at 1311.


**A. Deemed Liquidation**


The CAFC has already ruled that this Court has subject matter
jurisdiction over the case at bar under 28 U.S.C. § 1581(i)(4)and
through Shinyei's filing of an APA cause of action.  See Shinyei
CAFC, 355 F.3d at 1304-05.  The introduction to the APA states:
[t]his chapter applies, according to the provisions thereof, except
to the extent that– 1) statutes preclude judicial review; or 2)
agency action is committed to agency discretion by law."  5 U.S.C.
§ 701(a).  Thus, a cause of action under the APA can be terminated
if a statute preclude[s] judicial review.


The CAFC has already stated that as "the parties concede that
the [S]ubject [E]ntries were actually liquidated, [the CAFC] do[es]

not address Shinyei's arguments concerning the effect of deemed
liquidation on the [CIT's] subject matter jurisdiction, an issue
the trial court did not decide."[2]  Shinyei CAFC, 355 F.3d at 1308
n.5.  As both parties have raised the issue of deemed liquidation
in their briefs to this Court, and as this Court recognizes that
APA review can be statutorily precluded, the issue of deemed
liquidation is of primary concern in the case at bar.  See 5 U.S.C.
§ 701(a).[3]  19 U.S.C. § 1504(d) the statutory provision related to
deemed liquidation, states:

> [W]hen a suspension required by a statute or court order
> is removed, [Customs] shall liquidate the entry within 6
> months after receiving notice of the removal from
> [Commerce], other agency or a court with jurisdiction
> over the entry.  Any entry not liquidated by [Customs]
> within 6 months after receiving such notice shall be
> treated as having been liquidated at the rate of duty,
> value, quantity, and amount of duty asserted at the time
> of entry by the importer of record.

---

[2]  Though the CAFC references "Shinyei's arguments
concerning the effect of deemed liquidation on the [CIT's]
subject matter jurisdiction" this Court shall reference both
Shinyei's and the Government's arguments as they relate to deemed
liquidation and the motions filed. Shinyei CAFC, 355 F.3d at 1308
n.5.

[3]  Shinyei additionally argues that this Court should reject
the Government's deemed liquidation argument based on the
principles of judicial estoppel.  See Pl.'s Reply at 31-33.  The
CAFC, however, never decided the deemed liquidation issue.  See
Shinyei CAFC, 355 F.3d at 1308 n.5..  As such, the deemed
liquidation issue is before this Court for decision and there is
no judicial estoppel.

19 U.S.C. § 1504(d) (1988 as amended 1993).[4]

In order for entries to be deemed liquidated, three conditions must be satisfied: "(1) the suspension of liquidation that was in place must have been removed; (2) Customs must have received notice of the removal of the suspension; and (3) Customs must not liquidate the entry at issue within six months of receiving such notice." Koyo Corp. of U.S.A. v. United States, 29 CIT __, __, 403 F. Supp. 2d 1305, 1308 (2005) (citing Fujitsu v. United States, 283 F.3d 1364, 1376 (Fed. Cir. 2002)).

The suspension of liquidation on the disputed entries was removed once the judgment in Torrington Co. v. United States, 127 F.3d 1077 (Fed.Cir 1997) became final on January 13, 1998.[5]  Though the CAFC issued its decision on Torrington Co. on October 15, 1997, the judgment did not become final until the 90-day period to petition the United States Supreme Court for a writ of certiorari expired.  See Torrington Co., 127 F.3d 1077; Sup.Ct. R. 13.

_____

[4]  Though 19 U.S.C. § 1504(d) was amended in 1994, the amendment does not apply to administrative reviews commenced before January 1, 1995.  See NEC Solutions (Am.). Inc. v. United States, 27 CIT 1459, 277 F. Supp. 1340 n.11 (2003), aff'd, 411 F.3d 1340 (Fed.Cir 2005).

[5]  Torrington Co. reviewed the challenges to the Disputed Entries and to the Final Results published in the Federal Register.  See Torrington Co., 127 F.3d 1077; Final Results, 57 Fed. Reg. 28,360 (IA June 24, 1992).

On  February  23,  1998,  Customs  received  notice  of  the
suspension's  removal,  when  Commerce  published  the  Amended  Final
Results  of  the  1990-91  administrative  review  and  notice  of  final
court  decision  in  the  Federal  Register.  See  Fujitsu Gen. America,
Inc. v. United States,  283  F.3d  at  1381-82;  Amended Final Results,
63  Fed.  Reg.  8908.   Commerce  therein  stated  that  it  would  issue
appraisement  instructions  to  Customs.   See  Amended Final Results,
63  Fed.  Reg.  at  8909.

In  the  six  months  following  February  23,  1998,  Customs  did  not
liquidate  the  disputed  entries.   Def.  Statement  of  Material  Facts
Not  in  Dispute  at  2.   As  such,  the  disputed  entries  became  deemed
liquidated  on  August  23,  1998.   See  19  U.S.C.  §1504(d).   As  the
disputed  entries  were  deemed  liquidated  by  operation  of  law,  the
final  duty  asserted  by  Shinyei  was  the  rate  and  amount  of  duty
deposited  at  the  time  of  entry  or  withdrawal  from  warehouse,  not
the  rate  of  duty  determined  by  the  administrative  review.   See
Wolff Shoe Co. v. United States,  141  F.3d  1116,  1123-24  (Fed.  Cir.
1998).   When  courts  have  determined  that  entries  were  deemed
liquidated  under  19  U.S.C.  1504(d),  they  have  previously  set  aside
Customs'  actual  liquidation  and  have  treated  the  deemed  liquidation
as  being  final.   See  Cherry Hill,  112  F.3d  at  1560;  NEC Solutions
(Am.), Inc.,  411  F.3d  at  1343-46;  Int'l Trading Co.,  281  F.3d  at
1270-71,  1276-77;  American Int'l Chem., Inc.,  29  CIT  ___,  ___,  387

F.Supp 2d at 1269-70.

## B. Notification and Timing of Shinyei's Possible Remedies

Though courts, as stated <u>supra</u>, have viewed deemed liquidation as being final in nature, this Court is particularly troubled by Shinyei's delay in seeking relief.  Though not given notice by Custom's directly on the deemed liquidation, Shinyei was given notice, and Shinyei should have been aware of the inevitability of deemed liquidation under the conditions set forth in 19 U.S.C. § 1504(d).  Publication in the Federal Register "is sufficient to give notice . . . to a person subject to or affected by it."  44 U.S.C. § 1507 (1994).  44 U.S.C. § 1501 defines "person" as "an individual, partnership, association, or corporation[.]"  44 U.S.C. § 1501 (1994); <u>See</u> <u>International Trading Co. v. United States</u>, 412 F.3d 1303, 1309-10 (Fed.Cir. 2005).  Shinyei is a "person" that would be "affected" by the notice published in the Federal Register.[6]  Accordingly, publication in the Federal Register provided Shinyei with notice.

Shinyei contends that Custom's regulations as set forth in 19

---

[6] Though Shinyei was not a party to the administrative review, it is nonetheless a person whose entries were affected by the notice published in the Federal Register.

C.F.R. § 159.9(c)(2) and the recent <u>Norsk</u>[7] decision hold that Customs is required to give proper notice of liquidation regardless of whether the liquidation is actual or deemed and as such, the posting of the bulletin notice of liquidation is the actual trigger for deciding the start of the protest period. <u>See</u> Dec. Letter at 2; 19 C.F.R. § 159.9(c)(2). The purpose behind the deemed liquidation statute is to "increase certainty in the customs process[.]" <u>Int'l Trading</u>, 281 F.3d at 1272. In the instant matter, Customs was not aware of the Deemed Liquidation, and thereby could not post notice in the Bulletin. Certainty, therefore could never be guaranteed in a situation in which Customs was not aware of the deemed liquidation. As 19 U.S.C. § 1504 is meant to "bring finality to the duty assessment process," and as allowing the notification regulations set forth in 19 C.F.R. § 159.9(c)(2) to supercede such a finality would run counter to the statute, this Court rules that Customs is not bound by 19 C.F.R. § 159.9(c)(2) when it is not aware of the deemed liquidation at the time of its occurrence. <u>Cherry Hill</u>, 112 F.3d at 1559; <u>see</u> 19 U.S.C. § 1504.

Although the Disputed Entries were deemed liquidated, and Deemed Liquidation is final, Shinyei could have still taken action

---

[7] In <u>Norsk</u>, Customs was aware of the deemed liquidation, and thereby published notice. This differs significantly from the case at bar. <u>See</u> <u>Norsk</u>, 472 F.3d at 1353.

to protest the higher rate imposed on the Disputed Entries by the
deemed liquidation.  Shinyei could have requested that Customs
liquidate the entries prior to the August 23, 1998 deemed
liquidation date, but it did not.  Shinyei, however argues that it
"had no mandamus remedy to compel Customs to actually liquidate the
[Disputed Entries] before August 23, 1998."  Pl.'s Reply at 37.
Shinyei is incorrect.  Indeed, Shinyei could have sought mandamus
to compel liquidation of the Disputed Entries.  See Peer Chain Co.
v. United States, 28 CIT ___, ___,; 316 F. Supp.2d 1357, 1368
(2004).  For example, in NSK Corp v. United States ("NSK"), Court
No. 05-00670, the importer sought a preliminary injunction that
would restrain Customs from liquidating its entries by operation of
law.[8]


C. Status of the Preliminary Injunction

       Shinyei asserts that the injunction in Paragraph 3 of the
Order issued in Federal-Mogul is not a preliminary injunction, and
as it is still in place, it continues to prevent the deemed
liquidation of the Disputed Entries.  See Shinyei's Reply at 6-10;

_____

       [8] In NSK, the plaintiff imported antifriction bearings
between May 1994 and February 1995 that were subject to an
antidumping order.  Though the plaintiff attempted to gain
mandamus relief, the case was dismissed as a result of Customs'
actual liquidation of the plaintiff's entries prior to the
mandatory deemed liquidation date.  See Order, NSK Corp. v.
United States, Court No. 05-00670, December 28, 2005.

Trans. Oral Arg of October 26, 2006 at 45-49; Order, <u>Federal-Mogul</u>
<u>Corp. v. United States</u>, Court No. 92-06-00422, July 14, 1992.  The
Order, however, is clearly introduced with the language, "[u]pon
consideration of plaintiff's motion for a preliminary injunction .
. ." and continues, "ORDERED that plaintiff's motion for a
preliminary injunction . . . is granted." <u>See</u> Order, <u>Federal-Mogul</u>
<u>Corp. v. United States</u>, Court No. 92-06-00422, July 14, 1992.  As
the language of the Order is viewed holistically, taking into
consideration the actual introduction of the Order, as well as the
language in paragraph 3 of the Order, this Court finds that
paragraph 3 of the Order is merely qualifying the preliminary
injunction in a manner that is usual in the issuance of such
injunctions.  <u>See</u> Order, <u>Federal-Mogul Corp. v. United States</u>,
Court No. 92-06-00422, July 14, 1992.  The Order restrained the
Government from liquidating the Disputed Entries "during the
pendency of this litigation." <u>Id.</u>  This Court entered its final
judgment in <u>Federal-Mogul Corp. v. United States</u>, Court No. 92-06-
00422, on October 25, 1996.  <u>See</u> 20 CIT 1274 (October 25, 1996).
The judgment contained no continued injunctive provisions. <u>See</u> <u>id.</u>
Preliminary injunctions dissolve when a case becomes final.  <u>See</u>
<u>Cypress Barn, Inc. v. Wester Elec. Co.</u>, 812 F.2d 1363, 1364 (11th
Cir. 1987); <u>Volume Footwear Retailers of America</u>, 10 CIT 12,14
(1986).  The preliminary injunction from the Order therefore
dissolved on October 25, 1996. As such, deemed liquidation was not

suspended, and the Disputed Entries were liquidated by operation of
law.


## D. Defendant's Counterclaim

The Government filed an answer and counterclaim in the 01-
00707 case on February 26, 2003, "in which it sought repayment of
a refund erroneously paid to Shinyei on Entry No. 032-0153132-8."
Def's Brief at 31.  As mentioned supra, the 01-00707 case has been
consolidated into the case at bar.

The 032 Entries are included within the Disputed Entries that
were deemed liquidated on August 23, 1998.  See Decl'n of Edward N.
Maurer ("Maurer Dec.") at ¶¶ 7-8; Entry Summary for Entry No. 032-
0153132-8 (Oct. 30, 1990).  On October 13, 2000, Customs "actually"
liquidated the 032 Entries as a "no change" liquidation, though it
had already been deemed liquidated on August 23, 1998.  See Maurer
Dec. at ¶ 8.  Shinyei filed a protest on November 1, 2000, which
was allowed in part on June 22, 2001.  See id.  As a result,
Customs reliquidated the entry and paid a refund of $676.75, plus
interest of $827.50 on July 6, 2001.  See id.  As the 032 Entries
had already been liquidated by operation of law, and at the duty
rate deposited at the time of entry, over two years before Customs
had mistakenly "actually" liquidated the 032 Entries on October 13,
2000, Customs had erred in granting the refund to Shinyei.  As

such, the Government is entitled to recover the $676.75 erroneously refunded to Shinyei, as well as the $827.50 paid in interest, for a total of $1,504.25.  Additional interest, if any, shall be added to the total.


IV.  Conclusion

Based on the foregoing, the Disputed Entries were deemed liquidated on August 23, 1998.  Shinyei failed to seek mandamus relief prior to the deemed liquidation of the Disputed Entries.  As such, the deemed liquidation of the Disputed Entries is final. Furthermore, the CAFC did not consider the effects of deemed liquidation when they reversed and remanded this Court's previous decision.  Accordingly, Shinyei's motion for partial summary judgement is denied and the Government's motion for summary judgement is granted.  Judgment will be entered accordingly.


                              /s/ Nicholas Tsoucalas
                              NICHOLAS TSOUCALAS
                              SENIOR JUDGE


DATED:     April 20, 2007
           New York, New York

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS**

```
_____ :
                                         :
SHINYEI CORPORATION OF AMERICA,          :
                                         :
          Plaintiff,                     :
                                         :    Consolidated
          v.                             :    Court No. 00-00130
                                         :
UNITED STATES,                           :
                                         :
          Defendant.                     :
_____ :
```

<u>**JUDGMENT**</u>

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED** that Plaintiff's motion for partial summary judgment is denied; and it is further

**ORDERED** that Defendant's cross-motion for summary judgment is granted; and it is further

**ORDERED** that Shinyei Corporation of America return the erroneously refunded $676.75, as well as the $827.50 paid in interest, along with any additional interest, if any; and it is further

**ORDERED** that this case is dismissed.

```
                         /s/ Nicholas Tsoucalas
                    _____
                          NICHOLAS TSOUCALAS
                            SENIOR JUDGE
```

DATED:    April 20, 2007
          New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                              Deputy Clerk